IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, | ) ) ) |
| Plaintiff, | ) Civ. No. 08-0516-E-BLW ) ) ) |
| v. | ) MEMORANDUM DECISION ) AND ORDER ) |
| KEN L. SALAZAR et al., | ) ) ) |
| Defendants. | ) ) |

## INTRODUCTION

The Court has before it a motion for partial dismissal, or, in the alternative, to sever and transfer, filed by the BLM.  The Court heard oral argument on April 16, 2009, and took the motion under advisement.  For the reasons expressed below, the Court will deny the motion in large part, but will grant that portion of the motion seeking to dismiss the challenges to the Pocatello and Kemmerer RMPs.

## ANALYSIS

WWP has challenged 18 Environmental Impact Statements (EISs) prepared

**Memorandum Decision & Order – page 1**

by 18 separate BLM offices in six different states: (1) Idaho; (2) Montana; (3) Utah; (4) California; (5) Wyoming; and (6) Nevada. Each EIS supports a Resource Management Plan (RMP) governing that BLM district.

WWP argues that each of these 18 EISs suffers from the same two flaws. First, each EIS allegedly rejected the "no grazing" alternative as unlawful – that is, each agency concluded that it had no legal authority to consider a "no grazing" alternative. Second, each EIS allegedly failed to consider the cumulative effects of livestock grazing and climate change, among other impacts.

The BLM argues that this Court lacks subject matter jurisdiction over a "collective" challenge to 18 EISs because the Administrative Procedures Act (APA) authorizes review only of discrete and final agency actions. The BLM also points out that for two of the EISs – Pocatello and Kemmerer – no final Record of Decision (ROD) has been issued, and thus no final agency decision has been made that is subject to review. Finally, the BLM seeks either dismissal or transfer of 15 of the challenges on the ground that they involve RMPs governing land outside Idaho.

The Court turns first to the BLM's jurisdictional challenge to the "collective" action. WWP's complaint contains a two-pronged challenge to the 18 EISs. The first prong challenges the conclusion of each BLM office that it had no

**Memorandum Decision & Order – page 2**

legal authority to consider the "no grazing" alternative.  That conclusion, WWP asserts, "reflected the 'policy' determinations of the current Administration [of former President Bush] . . . ."  *See Complaint* at ¶ 142.  WWP does not allege that the Bush administration "policy" was transformed into a discrete and final BLM action that officially guided all of the BLM's field offices.  Rather, WWP infers that the administration policy was influential in compelling each of the field offices to reach the same conclusion to ignore the "no grazing" alternative.

In *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), the Supreme Court prohibited "a generic challenge" to agency action unless "there is in fact some specific order or regulation, applying some particular measure across the board to all individual classification[s] . . ., and . . . that order or regulation is final and has become ripe for review . . . ."  *Id*. at 890 n. 2.  Without identifying a final BLM action – applying agency-wide – that the "no grazing" alternative is unlawful, WWP is prohibited by *Lujan* from challenging those decisions on a generic basis.  However, the Court does not read WWP's complaint as being limited to such a generic challenge.  The complaint, read broadly, challenges the separate decisions of each BLM office – under the circumstances existing in that BLM district as will be set forth in the administrative record – to ignore the "no grazing" alternative.  Seen in this light, the complaint is not making a generic

**Memorandum Decision & Order – page 3**

challenge to a vague "policy" of a former administration, but is making a series of individual challenges to discrete final agency actions, each of which will require analysis of the applicable administrative record.

Moreover, the complaint also contains a second prong, challenging each EIS for failing to consider the cumulative impact of environmental factors including livestock grazing and global warming. This prong of the complaint likewise mounts an individual challenge to each EIS rather than a generic challenge to the entire group as a whole. Resolution of this prong will require examination of the administrative record applicable to the particular EIS under attack.

Based on these findings, the Court finds that WWP is generally challenging final agency action and hence is not running afoul of *Lujan*. However, in two specific cases, WWP has failed to challenge final agency action. With regard to the Pocatello and Kemmerer RMPs, there is no final agency action to review as the RODs have not issued. The challenges to those two RMPs must be dismissed.

Finding no jurisdictional shortcoming, the Court moves on to venue. The BLM argues first that WWP failed to comply with the venue statute governing suits against agencies of the United States, 28 U.S.C. § 1391. That statute authorizes venue for a civil action against an agency of the United States in a judicial district where the plaintiff resides, if no real property is involved in the

**Memorandum Decision & Order – page 4**

action. *See* 28 U.S.C. § 1391(e). While plaintiff WWP resides in Idaho, the BLM argues that real property is involved because WWP seeks review of BLM management of millions of acres of public lands. However, the legislative history to this statute shows that the real property limitation was added due to congressional concerns "over the local nature of some real property actions," *see* 14D Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3815 at p. 379 n. 18, suggesting that it relates to matters of right, title, and interest. *See generally, McCloskey v. U.S Postal Service*, 1988 WL 29291 at *1 (E.D. Pa. 1988) (finding § 1391(e) inapplicable because suit did not involve "right, title, or interest to real property"). The Court finds persuasive cases that have held that environmental actions such as this are not actions in which "real property is involved." *See e.g., NRDC v. TVA*, 340 F.Supp. 400, *reversed on other grounds*, 459 F.2d 255 (2nd Cir. 1972). Thus, suit is proper here under § 1391(e).

      The BLM argues that the challenges to non-Idaho RMPs should nevertheless be transferred for lack of venue. The governing statute is 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

      There is a strong presumption in favor of plaintiff's choice of forum. *See*

**Memorandum Decision & Order – page 5**

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).  The BLM must make a "strong showing" of inconvenience to warrant upsetting WWP's choice.  *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

As part of this inquiry, the court should consider private and public interest factors affecting the convenience of the forum.  *Piper Aircraft*, 454 U.S. at 255. Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling; and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious and inexpensive."  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law and the unfairness of  burdening citizens in an unrelated forum with jury duty."  *Id*. at 509.

This case will most likely be resolved by summary judgment on the basis of federal statutes, after a review of each of the administrative records supporting the 16 remaining RMPs.  Thus, most of the private factors, and many of the public

**Memorandum Decision & Order – page 6**

factors, fail to support any change in venue.

However, the need to have "localized controversies decided at home" is a factor in the BLM's favor.  The RMPs at issue govern huge tracts of land, much of it outside of this Judicial District.  Moreover, as the BLM's counsel pointed out at oral argument, the public comments on the EISs were intense and numerous, signaling a desire by the public in each affected area to be involved.

Of course, parceling out these cases does not necessarily bring the dispute any closer to "home."  The southern Utah RMP will be decided a long distance away in Salt Lake City; the northern California RMP will be decided a long distance away in San Francisco or Sacramento.

Even more importantly, the issues do not break down neatly into "home" judicial districts.  A key issue in this case is whether the BLM considered the cumulative impact of environmental factors acting in a widespread area stretching beyond RMP boundaries.  *See Amended Complaint* at ¶ 127-28.  For example, WWP alleges that each of the RMPs failed to consider the cumulative impacts on particular sage grouse populations, some of which are found in regions governed by several different RMPs.  *Id*. at ¶¶ 180, 205.  Moreover, WWP alleges that all the RMPs failed to address the cumulative impact of global warming, an impact that may extend beyond the boundaries of a judicial district.  *Id.*

**Memorandum Decision & Order – page 7**

The merits of these claims are not before the Court; it is their mere allegation that affects the venue analysis. And those allegations may require a court to analyze effects beyond the borders of its judicial district. Thus, the traditional desire to let disputes be resolved in their home court has less weight here where the resolving court may well be considering cumulative impacts in other judicial districts.

Resolution of environmental actions often affects areas far outside the judicial district of the resolving court. For example, Montana District Judge Donald W. Molloy resolved a dispute over the de-listing of a distinct population segment of the Rocky Mountain gray wolf that was found in Idaho, Wyoming and Montana. *See Defenders of Wildlife v. Hall*, 565 F.Supp. 1160 (D.Mont. 2008). A population segment may span several judicial districts requiring a court to look outside its own boundaries.

The BLM argues that WWP is forum-shopping. However, WWP's initial complaint challenged only the Craters of the Moon RMP, the first RMP to be issued in this group. That RMP was in the Eastern Division of this Court, and so the action was properly filed there. The Court can find no evidence to support the forum-shopping claim.

For these reasons, the Court finds that the BLM has not carried its burden of

**Memorandum Decision & Order – page 8**

overcoming the strong presumption in favor of WWP's choice of forum. Accordingly, the Court will deny the BLM's motion.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss, or to sever and transfer (docket no. 10) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to dismiss the challenges to the Pocatello and Kemmerer RMPs. It is denied in all other respects.



DATED: **May 7, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge