IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, | |
| Plaintiff, | Case No.  4:08-CV-516-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KEN SALAZAR, Secretary, DEPARTMENT OF THE INTERIOR, | |
| Defendants. | |

## INTRODUCTION

The Court has before it a motion to intervene filed by three entities (QEP Resources, Inc., SWEPI LP, and Ultra Resources, Inc.) ("the Operators") that run oil and gas drilling operations in the Pinedale area of Wyoming.  The motion is fully briefed and at issue. The Court will grant the motion for the reasons explained below.

## ANALYSIS

Rule 24(a) permits intervention when the following criteria are satisfied:  (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 817 (9th Cir.

**Memorandum Decision & Order – page 1**

2001).

In general, the Court must construe Rule 24(a) liberally in favor of potential intervenors. *Id.* at 818. Moreover, the Court's evaluation is "guided primarily by practical considerations," not technical distinctions. *Id.* However, "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents,* 587 F.3d 947, 950 (9th Cir.2009).

In this case, the only factor at issue is the fourth:  WWP argues that the Operators' interest is adequately represented by an existing intervenor, the Petroleum Association of Wyoming.  In addressing this factor, the Court must consider:  (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Berg,* 268 F.3d at 822.  The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. *Id.* However, the burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Id.*

Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies. *Freedom From Religion Foundation, Inc. v. Geithner,* 644 F.3d 836, 841 (9th Cir. 2011).  Such presumption can be rebutted only by "a compelling showing to the contrary." *Id.*

In this case, the Operators own or operate over 2500 wells in the Pinedale

**Memorandum Decision & Order – page 2**

Anticline, with plans to drill hundreds more.  If the Court enforces restrictive interim sage-grouse measures sought by WWP, this drilling may be affected.

Two of the three Operators sit on the Board of Directors of the Petroleum Association of Wyoming (PAW), which has already been allowed to intervene in this case.  The PAW is made up of dozens of members of the oil and gas industry across Wyoming.  The Court allowed the PAW to intervene based on its representation that it was "uniquely situated" to inform the Court about "the nature and extent of current oil and gas operations in sage-grouse habitat on the Pinedale Anticline," as well as information regarding efforts "to mitigate impacts to sage-grouse" there.

The PAW and the Operators share the same "ultimate objective" – to block remedies affecting oil and gas drilling.  Thus, the Operators must make a "compelling showing" that the PAW will not adequately represent its interests.

The Operators argue that while their substantial investments in the Pinedale area are directly at risk, the PAW's members may be more willing to compromise because their interests are not so directly threatened.  That seems highly unlikely; it strains credulity to suggest that the interests of the Operators and the PAW would ever diverge, given that two Operators sit on the PAW's Board of Directors.  What cannot be ignored, however, is that the Operators have a direct investment that could be significantly affected by the remedies issued by this Court, and that makes a compelling case for allowing them to intervene.

But the Court will not grant intervention unfettered.  The Court's concern is that

**Memorandum Decision & Order – page 3**

the Operators and the PAW will act as a united "super-party" with twice the number of pages of briefing as are available to WWP and the other parties.  That would be unfair. To level the playing field, the Court will require that the Operators and the PAW divide the pages of briefing assigned to each of the parties.   If the Operators and PAW cannot agree upon a fair allocation of the assigned pages of briefing, they will be split evenly between them.

### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to intervene filed by QEP Resources, Inc., SWEPI LP, and Ultra Resources, Inc. (docket no. 135) is GRANTED, and these intervenors shall share the briefing page limit with intervenor Petroleum Association of Wyoming.

DATED:  **January 6, 2012**



Honorable B. Lynn Winmill
Chief U. S. District Judge